**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

LEOTIS WILLIAMS,

    Petitioner,

vs.                                       Case No.:    3:14-cv-1279-J-34JRK
                                                                                  3:13-cr-6-J-34JRK

UNITED STATES OF AMERICA,

    Respondent.

_____/

## **ORDER**

This case is before the Court on Petitioner Leotis Williams's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Civ. Doc. 1, Motion to Vacate).[1] The United States has responded (Civ. Doc. 4, Response), and Williams has replied (Civ. Doc. 5, Reply).

Pursuant to 28 U.S.C. § 2255 and Rule 8(a) of the Rules Governing Section 2255 Proceedings[2], the Court has considered the need for an evidentiary hearing and determines that an evidentiary hearing is not necessary to resolve the merits of this action. See Aron v. United States, 291 F.3d 708, 714–15 (11th Cir. 2002) (an evidentiary hearing on a § 2255 petition is not required when the petitioner asserts allegations that are affirmatively contradicted by the record or patently frivolous, or if in assuming the facts that

---

[1]     Citations to the record in the underlying criminal case, United States vs. Leotis Williams, Case No. 3:13-cr-6-J-34JRK, will be denoted as "Crim. Doc. \_\_." Citations to the record in the civil § 2255 case, Case No. 3:14-cv-1279-J-34JRK, will be denoted as "Civ. Doc. \_\_."

[2]     Rule 8(a) of the Rules Governing Section 2255 Proceedings expressly requires the Court to review the record, including any transcripts and submitted materials, to determine whether an evidentiary hearing is warranted before deciding on a § 2255 motion.

1

he alleges are true, he still would not be entitled to any relief); Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989) (a petitioner's ineffective assistance claim can be dismissed without an evidentiary hearing when the petitioner alleges facts that, even if true, would not entitle him to relief); Dickson v. Wainwright, 683 F.2d 348, 351 (11th Cir. 1982) ("On habeas a federal district court need not conduct an evidentiary hearing if it can be conclusively determined from the record that the petitioner was not denied effective assistance of counsel."); Patel v. United States, 252 F. App'x 970, 975 (11th Cir. 2007).[3] For the reasons set forth below, Williams's Motion to Vacate is due to be denied.

## I. Background

On September 25, 2012, Williams sold approximately two ounces of cocaine to a confidential informant named Alvin Williams ("the informant"), who was working at the time for the Fernandina Beach Police Department under a deferred arrest agreement. (See Crim. Doc. 99, Trial Transcript Volume II at 36-37, 52, 54-56). Three days later, on September 28, 2012, Williams sold three "cookies" of crack cocaine to the same informant. See id. at 60-61. The police arrested Williams shortly after the second transaction. Both controlled purchases were audio- and video-recorded. See id. at 38-41, 61-62.

On August 1, 2013, a grand jury sitting in the Middle District of Florida indicted Williams on one count of distributing cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), and one count of distributing crack cocaine, in violation of 21 U.S.C. §§

---

[3] Although the Court does not rely on unpublished opinions as precedent, they may be cited throughout this Order as persuasive authority on a particular point. Rule 32.1 of the Federal Rules of Appellate Procedure expressly permits the Court to cite to unpublished opinions that have been issued on or after January 1, 2007. Fed. R. App. P. 32.1(a).

2

841(a)(1) and 841(b)(1)(C). (Crim. Doc. 37, Superseding Indictment). Williams pled not guilty and proceeded to a jury trial.

At trial, the United States introduced the testimony of the informant, the informant's handler (Sergeant Matthew Bowen), as well as audio and video recordings of the controlled purchases, along with other evidence. The informant described how he came to work for the police under a deferred arrest agreement and how the controlled purchases with Williams transpired. Trial Tr. Vol. II at 34-81. The informant described purchasing two one-ounce bags of cocaine from Williams on September 25, 2012, as well as purchasing three crack cocaine "cookies" from Williams on September 28, 2012. Id. at 53-60, 60-61. Still-shots from the video recordings of the transactions depicted Williams himself, id. at 58-60, two one-ounce bags of cocaine, id. at 54-56, three "cookies" of crack cocaine, id. at 68-69, and Williams counting the money from the sale, id. at 69-71. Additionally, audio from the September 25 transaction captured Williams and the informant discussing the need to get a "bench," or a scale, to weigh the drugs. Id. at 53, 111-12. Audio from that same transaction further captured Williams and the informant negotiating a price for the cocaine. Id. at 113-14.

The jury deliberated for a little over an hour before returning a guilty verdict on both counts. Id. at 199-200. The Court sentenced Williams to concurrent terms of 120 months in prison as to each count, followed by a three-year term of supervised release. (Crim. Doc. 87, Judgment). Williams appealed the judgment, challenging only the reasonableness of his sentence. United States v. Williams, 573 F. App'x 912, 912 (11th Cir. 2014). The Eleventh Circuit rejected Williams's argument, concluding that "[t]he district court did not abuse its discretion by sentencing Williams to a term of imprisonment far

below his advisory guideline range," which had been 210 to 262 months in prison. Id. at 912-13. After the Eleventh Circuit affirmed Williams's conviction and sentence, he did not petition the Supreme Court for certiorari review.

**II.    Williams's Motion to Vacate**

On October 15, 2014, Williams timely filed the instant Motion to Vacate. In Ground One, Williams contends that the Court lacked subject matter jurisdiction because (1) Sergeant Bowen represented himself to be a member of the Fernandina Beach Police Department rather than the Drug Enforcement Administration (DEA); (2) the controlled purchases were operated and funded by the Fernandina Beach Police Department; and (3) Williams's activities involved only intrastate commerce. Motion to Vacate at 4. In Ground Two, Williams claims that counsel gave ineffective assistance by (1) failing to advise the Court that the defense had not received all of the discovery, (2) failing to object to the lack of subject matter jurisdiction, and (3) failing to object to alleged Brady[4] violations. Id. at 5. In Ground Three, Williams alleges two types of prosecutorial misconduct: (1) that the prosecution violated Brady by withholding "ordered information," including video and audio recordings, and (2) that the prosecution misrepresented the existence of the Court's jurisdiction. Id. at 7. In Ground Four, Williams claims that he is actually innocent because "the government lacked authority to prosecute." Id. at 8.

On May 9, 2016, Williams moved to amend his Motion to Vacate. (Civ. Doc. 6, Motion to Amend). In the Motion to Amend, Williams added a claim that he was improperly classified as a career offender under § 4B1.1 of the United States Sentencing Guidelines.

---

[4]    Brady v. Maryland, 373 U.S. 83 (1963) (the prosecution has a duty to disclose exculpatory evidence).

4

Williams claims that § 4B1.2's "residual clause" is unconstitutionally vague in light of Johnson v. United States, 135 S. Ct. 2551 (2015), and as such, that his career offender classification is unlawful.

### III. Discussion

Pursuant to Title 28, United States Code, Section 2255, a person in federal custody may move to vacate, set aside, or correct his sentence. Section 2255 permits such collateral challenges on four specific grounds: (1) the imposed sentence was in violation of the Constitution or laws of the United States; (2) the court did not have jurisdiction to impose the sentence; (3) the imposed sentence exceeded the maximum authorized by law; or (4) the imposed sentence is otherwise subject to collateral attack. 28 U.S.C §2255(a) (2008). Only jurisdictional claims, constitutional claims, and claims of error that are so fundamentally defective as to cause a complete miscarriage of justice will warrant relief through collateral attack. United States v. Addonizio, 442 U.S. 178, 184-86 (1979). A petitioner's challenge to his sentence based on a Sixth Amendment claim of ineffective assistance of counsel is normally considered in a collateral attack. United States v. Teague, 953 F.2d 1525, 1534 n. 11 (11th Cir. 1992).

#### A. Ground One: Lack of Jurisdiction

Williams's first claim is that the Court lacked subject matter jurisdiction, essentially because a local police department rather than the DEA conducted the investigation that led to his arrest, and because his activities involved only intrastate commerce. This claim lacks merit.

It does not matter that local law enforcement officers, rather than the DEA, spearheaded the investigation that led to the charges against Williams. "The district courts

5

of the United States have original and exclusive jurisdiction over 'all offenses against the laws of the United States.'" United States v. Peter, 310 F.3d 709, 713 (11th Cir. 2002) (quoting 18 U.S.C. § 3231); see also U.S. Const. art. III, § 2, cl. 1 ("The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority…"). Thus, so long as an indictment charges the defendant with violating the "laws of the United States," that is enough to vest subject-matter jurisdiction in a federal court. United States v. Brown, 752 F.3d 1344, 1348 (11th Cir. 2014) (citing Alikhani v. United States, 200 F.3d 732, 734 (11th Cir. 2000)). While a defective indictment could strip a federal court of subject-matter jurisdiction, it does so if it charges (1) a crime that simply did not exist in the United States Code, (2) conduct that undoubtedly fell outside the sweep of the criminal statute, or (3) a violation of a regulation that was not intended to be a "law" for the purpose of criminal liability. Brown, 752 F.3d at 1353 (internal citations omitted). None of these exceptions applies here. The grand jury charged Williams with violating 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) – a federal criminal statute – for distributing cocaine and crack cocaine. Superseding Indictment at 1-2. Section 841 makes it a crime "to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance," 21 U.S.C. § 841(a)(1), which substances include cocaine and its salts and isomers, id. at § 812, Schedule II(a)(4). Thus, the grand jury indicted Williams for conduct that fell within the sweep of a federal criminal statute. As such, this Court had jurisdiction over Williams's criminal charges.

Williams's claim that the Court lacked jurisdiction because his drug activities involved only intrastate commerce is also mistaken. For violations of the Controlled

6

Substances Act (CSA), such as those charged here, it is not necessary for the drugs or the persons dealing those drugs to cross state lines. The Supreme Court has held unequivocally that the CSA is a proper exercise of Congress' authority to regulate interstate commerce even when it is applied to local activities. Gonzales v. Raich, 545 U.S. 1 (2005). In Raich, the Court explained that Congress could lawfully regulate the intrastate cultivation of marijuana—even for purely personal consumption—because the cumulative impact of such production substantially affects the interstate market for the drug. Id. at 17–20, 22. Raich's rationale applies with equal force to distributing cocaine. See United States v. Wilson, 238 F. App'x 571, 572-73 (11th Cir. 2007) (rejecting Commerce Clause challenge to conviction for conspiracy to possess crack cocaine with intent to distribute); United States v. Peterson, 194 F. App'x 786, 788 (11th Cir. 2006) (rejecting Commerce Clause challenge to a conviction for "a local street-corner sale" of cocaine base). It does not matter that Williams's particular activities may have been confined to Florida, because Congress has the "power to regulate purely local activities that are part of an economic class of activities that have a substantial effect on interstate commerce." Raich, 545 U.S. at 17. Accordingly, Williams's argument that the Court lacked jurisdiction because his conduct did not implicate interstate commerce lacks merit.[5] Relief on Ground One is due to be denied.

---

5      Williams cites in passing to 28 U.S.C. §§ 509, 510, and 533 (which concern the functions of the Attorney General), but he offers no argument explaining how these pertain to Ground One. Accordingly, the Court does not address them. See Towbridge v. Tacker, 488 F. App'x 402, 404 (11th Cir. 2012) (citing Rowe v. Schreiber, 139 F.3d 1381, 1382 n.1 (11th Cir. 1998)) ("Issues raised only in passing, without supporting argument or citation, are abandoned.").

**B. Ground Three: Prosecutorial Misconduct**

For ease of discussion, the Court addresses Ground Three before addressing Ground Two. In Ground Three, Williams alleges two types of prosecutorial misconduct. First, he claims that the prosecution violated Brady by withholding evidence that it had been ordered to disclose, including video and audio recordings. Motion to Vacate at 7. Second, he claims that the prosecution "knowingly and deliberately" misrepresented the existence of subject matter jurisdiction. Id. Neither claim has merit.

The government has a constitutional obligation to disclose exculpatory evidence in its possession to a defendant. Brady, 373 U.S. at 87. The elements of a Brady violation are: (1) that the prosecution possessed evidence favorable to the defendant; (2) that the defendant did not possess the evidence nor could he have obtained it himself with any reasonable diligence; (3) that the prosecution suppressed the favorable evidence; and (4) that had the evidence been disclosed to the defense, a reasonable probability exists that the outcome of the proceedings would have been different. United States v. Bailey, 123 F.3d 1381, 1397 (11th Cir. 1997).

With respect to the alleged Brady violation, Williams's claim is vague and conclusory, consisting of a total of 33 words:

> Petitioner concedes [sic] that Prosecution: 1. withheld important ordered information: video, audio etc. from the jury and court in order to get a conviction, thus constituting a clear miscarriage of justice and a Brady violation.

Motion to Vacate at 7. That's all Williams says. Notably, Williams asserts only that the prosecution withheld the evidence from the jury and the Court, not from him. Moreover, Williams does not identify the evidence, explain how the allegedly suppressed audio or video tapes were favorable to him, or how there is a reasonable probability that such

8

evidence would have persuaded the jury to acquit him. The claim is too vague and conclusory to warrant an evidentiary hearing, let alone relief on the merits. See Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (a petitioner is not entitled to an evidentiary hearing when his claims are merely conclusory allegations unsupported by specifics).

Nevertheless, the record refutes Williams's conclusory allegation of a Brady violation. Following trial, the Court held a "status of counsel hearing" (see Crim. Doc. 113, Civ. Doc. 4-1, Hearing Transcript) to address a pro se letter Williams had written the Court (Crim. Doc. 78, Pro Se Letter). Williams asked that his trial counsel, Charles Truncale, be fired and replaced with another lawyer. Id. At the hearing, Williams aired his grievances with counsel and the prosecution, specifically insisting that the government had withheld impeachment evidence relating to the informant and that the video evidence was incomplete. See Hr'g Tr. at 9-10, 13-22. However, Williams's counsel himself stated that "there was no Brady violation by the government." Id. at 21. Counsel assured Williams and the Court that the Brady material Williams thought existed did not exist, that the prosecution had provided him with all Brady evidence he had requested, and that he had reviewed the available evidence and used it to "severely impeach[ ]" the informant. Id. at 9-11, 22-24. The United States confirmed that before trial, counsel requested, and the United States provided, all Brady evidence it had, including over 50 pages of law enforcement records and reports related to the informant. Id. at 33-34. The United States disclosed that the informant had prior convictions, pending charges, was on probation, and was working for the Fernandina Beach Police Department under a deferred arrest agreement. See id. Responding to Williams's claim that the video evidence was incomplete, the United States said that the video records of the two controlled purchases

9

"were admitted in their entirety, and then a portion was shown to the jury." Id. at 35. Williams's counsel added that he did not want to play the entire videos because the unplayed portions were unhelpful and would have been confusing to the jury. Id. at 26-28, 30. Besides, counsel explained, he got the informant and Sergeant Bowen to admit on the stand exactly what he wanted to get out of the videos, which is that the controlled purchases were not fully monitored because the informant disappeared inside his residence during both transactions, such that the drugs taken off the informant after the controlled buy could have come from the informant's residence rather than Williams. See id. at 26-28, 30. Counsel explained that since he got the testimony he needed, he found no need to play the entire videos. Id. at 28, 30.

After listening to Williams and the attorneys, the Court concluded that it appeared the government had disclosed all the Brady evidence it possessed, and that trial counsel "did everything he was supposed to do with it." Id. at 36. The Court recognized that Williams disagreed with counsel's decision about what portions of the videos to play for the jury, but noted that "it sounds like Mr. Truncale was able to make all the points he wanted to make." Id. at 37. The Court also noted that Williams's counsel is an experienced and well-respected attorney, that he appeared well prepared for trial, and that he executed an effective strategy – even if it was not one that resulted in an acquittal. Id. at 37-38. Notably, following this discussion, Williams stated that he had reached an understanding with his counsel, and that after getting a chance to talk about the issues he wanted to address, he no longer wanted to replace him. Id. at 36, 39.

The record shows that both trial counsel and the United States agreed that there was no undisclosed Brady evidence, that counsel had requested all available Brady

material, and that the United States provided it to counsel. As such, to the extent Williams attempts to assert that the United States suppressed Brady evidence, such an assertion is no more than bare conjecture, which both his own trial counsel and the United States denied. As such, the record refutes Williams's unsubstantiated Brady allegations.

Insofar as Williams alleges that the prosecution "knowingly and deliberately" misrepresented the existence of subject matter jurisdiction, this claim fails for the same reasons as Ground One. As explained in Part III.A, supra, the Court properly had subject matter jurisdiction over Williams's criminal charges. As such, the prosecution did not misrepresent the existence of subject matter jurisdiction.

In addition to the allegations above, Williams also seems to claim in his reply brief that the government violated his due process rights by not following proper protocol in activating the informant, who was on probation when he began working for the Fernandina Beach Police Department under a deferred arrest agreement. See Reply at 2-5. Williams claims, for example, that 28 U.S.C. §§ 509, 510, and 533 "preclude[ ] a government official … from using and/or obtaining information from fugitives," and that Sergeant Bowen failed to obtain permission from the informant's probation officer and state court judge before using him as a confidential source. See id. at 2-3. Williams contends that such practices were inconsistent with the Attorney General's guidelines concerning the use of confidential informants. Id. at 4.

This last argument is not properly before the Court since Williams raised it for the first time only in his reply brief without seeking to amend his § 2255 motion. See Snyder v. United States, 263 F. App'x 778, 779-80 (11th Cir. 2008) (district court did not err in not addressing claim raised for the first time in a reply brief). Nevertheless, the claim has no

merit. The statutes Williams cites, 28 U.S.C. §§ 509, 510, and 533, say nothing about the use of confidential informants; they merely describe the functions and powers of the Attorney General. Moreover, law enforcement's failure to comply with procedures for activating an informant does not violate the due process rights of a defendant. See United States v. Christie, 624 F.3d 558, 572-73 (3d Cir. 2010). Guidelines and procedures regulating the use of confidential informants "do not themselves create private rights for criminal defendants," id. at 573 (citations omitted), nor do they "purport to be rules, much less the limits of constitutional behavior," id. Therefore, Williams's claim that police failed to follow protocol in activating the informant is not cognizable on habeas review. Addonizio, 442 U.S. at 184-86 (only jurisdictional claims, constitutional claims, and claims of error that are so fundamentally defective as to cause a complete miscarriage of justice will warrant relief through collateral attack). As such, relief on Ground Three is due to be denied.

### C. Ground Two: Ineffective Assistance of Counsel

In Ground Two, Williams raises three claims of ineffective assistance of counsel: (1) that counsel failed to object to or advise the Court about discovery that the defense did not receive; (2) that counsel failed to object to the lack of subject matter jurisdiction; and (3) that counsel failed to object to alleged Brady violations. Motion to Vacate at 5.

As with any Sixth Amendment ineffective assistance of counsel claim, a § 2255 petitioner must demonstrate both: (1) that his counsel's conduct amounted to constitutionally deficient performance, and (2) that his counsel's deficient performance sufficiently prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984); Weeks v. Jones, 26 F.3d 1030, 1036 (11th Cir. 1994). In determining whether the petitioner has satisfied the first requirement, i.e. that counsel performed deficiently, the Court

adheres to the standard of reasonably effective assistance. Weeks, 26 F.3d at 1036. The petitioner must show, in light of all the circumstances, that counsel's performance fell outside the "wide range of professionally competent assistance." Id. To satisfy the second requirement, that counsel's deficient performance prejudiced the defendant, the petitioner must show that there is a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. Id. at 1036-37 (citing Strickland, 466 U.S. at 694). In determining whether a petitioner has met the two prongs of deficient performance and prejudice, the Court considers the totality of the evidence. Strickland, 466 U.S. at 695. However, because both prongs are necessary, "there is no reason for a court… to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." Id. at 697; see also Wellington v. Moore, 314 F.3d 1256, 1261 n. 1 (11th Cir. 2002) ("We need not discuss the performance deficiency component of [petitioner's] ineffective assistance claim because failure to satisfy the prejudice component is dispositive.").

Williams's first and third subclaims of ineffective assistance, regarding counsel's failure to object to undisclosed discovery and alleged Brady violations, lack merit for the same reasons as Ground Three. As discussed in Part III.B, supra, the record refutes Williams's claim that the government failed to disclose required discovery or Brady material. Williams's bare allegation that other undisclosed evidence exists is vague and conclusory, and as such, does not warrant relief. Tejada, 941 F.2d at 1559. The record also reflects that counsel demanded all available Brady evidence, that counsel received it, and that he used it to impeach the government's informant. See Hr'g Tr. at 9-11, 22-24, 33-34. Indeed, counsel used the informant's criminal record to attack his credibility, Trial

Tr. Vol. II at 81-83, he used the fact of the informant's pending charges and the deferred arrest agreement to suggest that the informant was motivated to testify for the prosecution in exchange for lenience, id. at 83-91, and he attacked the informant's trustworthiness based on the fact that he breached his deferred arrest agreement by committing new crimes, id. at 91-97. Thus, the record illustrates that counsel not only obtained available Brady evidence, but that he used it to seriously impeach the informant. Moreover, with respect to the audio-video recordings of the controlled purchases, the record reflects that the United States offered the entirety of the videos into evidence. Hr'g Tr. at 35. However, Williams's counsel made a deliberate decision not to play the entire videos because doing so would be unnecessary, unhelpful, and would likely only frustrate or confuse the jury. Id. at 26-28, 30. Such strategic decisions about the presentation of evidence are given significant deference. See Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995) (which witnesses to call, if any, "is the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess.") (citation omitted). Accordingly, the record shows that trial counsel performed reasonably under the circumstances with respect to investigating the evidence and preparing a trial strategy.

Moreover, even if counsel had performed deficiently regarding the investigation, Williams never explains how there is a reasonable likelihood the outcome of the trial would have been different. Indeed, the evidence against Williams was considerable. Not only did the evidence include the informant's testimony, but it also included audio-video recordings of two controlled purchases, which depicted Williams himself, two ounces of cocaine, three crack cocaine cookies, and Williams counting the money from the transaction. Trial Tr. Vol. II at 54-56, 58-59, 68-69, 69-71. Williams's own counsel stated after trial that the

14

evidence was so strong that he had advised Williams to plead guilty. Hr'g Tr. at 5. As counsel explained, the videos "showed a person very, very, very clearly with a strong resemblance to the defendant, Mr. Williams, counting out money, matching the allegations" of a drug purchase in the amount of $2,000 or so. Id. at 4. In counsel's judgment, the video recordings were "very, very serious" and persuaded the jury to convict Williams because their impact was "almost unrebuttable." Id. at 11-12. Given that the evidence of guilt was considerable, Williams has not shown that he suffered prejudice from counsel's allegedly inadequate pretrial investigation. See LeCroy v. Sec'y, Dep't of Corr., 421 F.3d 1237, 1265-66 (11th Cir. 2005) (habeas petitioner did not establish prejudice from counsel's failure to investigate additional evidence that his co-defendant committed the murder where there was a "mountain of evidence" incriminating the petitioner). As such, Williams's first and third subclaims of ineffective assistance are due to be denied.

Williams's second subclaim of ineffective assistance is that counsel failed to object to the lack of subject matter jurisdiction. However, as the Court explained concerning Ground One, the Court had subject matter jurisdiction over Williams's case. Any objection to the Court's jurisdiction would have been meritless, and an attorney does not perform deficiently by failing to raise a meritless objection. Ladd v. Jones, 864 F.2d 108, 110 (11th Cir. 1989) ("[S]ince these claims were meritless, it was clearly not ineffective for counsel not to pursue them."). Therefore, relief on this ground is due to be denied as well.

### D. Ground Four: Actual Innocence

In Ground Four, Williams claims that he is actually innocent because "the government lacked authority to prosecut[e]." Motion to Vacate at 8. This claim fails for two independent reasons. First, assuming that Williams is referring to the alleged absence of

subject matter jurisdiction, the claim fails because as explained regarding Ground One, the Court did have subject matter jurisdiction. Second, Williams's allegation is not a true actual innocence claim. "[F]or purposes of the actual innocence exception, '"actual innocence" means factual innocence, not mere legal insufficiency.'" McKay v. United States, 657 F.3d 1190, 1197 (11th Cir. 2011) (emphasis in original) (quoting Bousley v. United States, 523 U.S. 614, 623 (1998)). See also Sawyer v. Whitley, 505 U.S. 333, 339 (1992) ("[T]he miscarriage of justice exception is concerned with actual as compared to legal innocence."). Because Williams's "actual innocence" claim has nothing to do with his factual innocence, the allegation fails to state a valid actual innocence claim. As such, Ground Four is due to be denied.

### E. The Motion to Amend, Johnson, and the Career Offender Enhancement

Finally, Williams amended his § 2255 motion to add a claim that, based on the Supreme Court's decision in Johnson, 135 S. Ct. 2551, his classification as a career offender under § 4B1.1 of the United States Sentencing Guidelines ("Guidelines") was unlawful. See generally Motion to Amend. The Supreme Court held in Johnson that the Armed Career Criminal Act's (ACCA's) "residual clause" is unconstitutionally vague because it creates uncertainty about how to evaluate the risks posed by a prior crime and how much risk it takes to qualify as a violent felony. 135 S. Ct. at 2557-58. At the time of Williams's sentencing, U.S.S.G. § 4B1.2(a)(2) contained a residual clause that was identical to the ACCA's residual clause. However, the Supreme Court held that its decision in Johnson does not extend to the Guidelines' career offender provision because the void-for-vagueness doctrine does not apply to advisory sentencing guidelines. Beckles v. United States, 137 S. Ct. 886, 894-95 (2017). Therefore, binding precedent forecloses

Williams's argument that <u>Johnson</u> invalidates his career offender enhancement, and relief on this claim is due to be denied.[6]

## IV.     Certificate of Appealability Pursuant to 28 U.S.C. § 2253(c)(1)

If Williams seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. This Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Williams "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," <u>Tennard v. Dretke</u>, 542 U.S. 274, 282 (2004) (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 335–36 (2003) (quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See <u>Slack</u>, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable

---

[6]     In any event, Williams's career offender designation did not implicate the residual clause. (<u>See</u> Civ. Doc. 14, United States' Response to Order to Show Cause). Williams received the career offender enhancement because he had three prior convictions for a "controlled substance offense," consisting of a prior conviction for the sale of cocaine and two prior convictions for possession of cocaine with intent to distribute. Presentence Investigation Report at ¶ 30; (Crim. Doc. 95, Sentencing Transcript at 4-5). Thus, even if § 4B1.2(a)(2)'s residual clause were unconstitutionally vague, Williams still would not be entitled to relief.

17

whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, this Court will deny a certificate of appealability.

As such, and in accordance with the Rules Governing Section 2255 Cases in the United States District Courts, it is hereby

**ORDERED**:

1. Petitioner Leotis Williams's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Civ. Doc. 1), as amended (Civ. Doc. 6), is **DENIED**.

2. The Clerk shall enter judgment in favor of the United States and against Leotis Williams, and close the file.

3. If Williams appeals the denial of the petition, the Court denies a certificate of appealability. Because this Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

**DONE AND ORDERED** at Jacksonville, Florida this 23rd day of January, 2018.

MARCIA MORALES HOWARD
United States District Judge

Lc19

Copies:

Counsel of Record

Pro se petitioner